IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TRADE WELL INTERNATIONAL, DELLS
LODGING OPERATOR INC. and DELLS
ESTATE LLC,

                              Plaintiffs,                    OPINION & ORDER

v.

                                                                12-cv-701-wmc

UNITED CENTRAL BANK,

                              Defendant.

---

In this civil action, plaintiff Trade Well International ("Trade Well") originally sought the return of certain personal property stored in a hotel now owned by defendant United Central Bank ("UCB") through foreclosure. Trade Well also claimed that at least some of that property is either missing or badly damaged and seeks a monetary award from UCS for its role in causing this loss. Following a hearing, the court previously ordered Trade Well to remove the property in question from UCB's hotel by January 3, 2014, staying any potential sale of the hotel during that time. (Opinion & Order (dkt. #36).) Any property Trade Well failed to remove by the deadline would be deemed abandoned. (*Id.*) Upon Trade Well's motion, the court extended the deadline to remove the property until January 24, 2014, but denied Trade Well's request that UCB be compelled to find and pay a company to remove and/or store the property on its behalf. (*See* Opinion & Order (dkt. #49).)[1]

Since then, UCB has apparently found a buyer for the hotel, with closing originally set for March 14, 2014. On March 12, 2014, two days before that closing and almost two

---

[1] Trade Well has also been given numerous opportunities to examine and document the condition of its alleged personal property.

months after abandoning its claimed property, Trade Well, through its attorney Maurice J. Salem, took the extraordinary (and frankly, given the history of this lawsuit to date, outrageous) step of filing a Notice of Lien on the hotel property with the Register of Deeds for Sauk County, Wisconsin (the "Notice"). According to the Notice, the lien arises under Wis. Stat. § 779.06, which lists requirements for the filing of a construction lien pursuant to Wis. Stat. § 779.01. The Notice further falsely alleges that the *hotel* "is currently the subject of a pending federal court lawsuit in Madison, Wisconsin, *Trade Well International v. United Central Bank,* Case No. 12-cv-701, US District Court for the Western District of Wisconsin." (*See* Brian Thill Aff. Ex. 1 (dkt. #57-1).) On March 14, 2014, UCB moved to strike the Notice in this court, alleging that the Notice has prevented the parties from closing on the sale of the hotel. (Dkt. #56.)

UCB points to myriad problems with the Notice, all of which are well-taken and to which the court will add its own objections. UCB points out that the Notice is not even authorized by Wis. Stat. § 779.06. That statute requires a *construction* lien be filed within six months of the date the lien claimant "performed, furnished, or procured the last labor, services, materials, plans, or specifications" for improvement of the real estate. Wis. Stat. § 779.06(1); *see also Am. Wood Dryers, Inc. v. Bombardier Capital, Inc.*, 305 F. Supp. 2d 966, 972 (W.D. Wis. 2002) ("Under Wisconsin's construction lien law, Wis. Stat. §§ 779.01-17, anyone who provides labor and materials for 'improvements' to real estate may file a lien against the real estate if he or she does not receive payment."). Trade Well has offered *no* evidence that it furnished materials or labor for improvements to the hotel property within six months of filing the Notice. Indeed, the evidence is directly *contrary* since: (1) the hotel has essentially been abandoned by its original owner and in foreclosure since November,

2010; and (2) Trade Well has *never* claimed entitlement to anything more than its *personal* property. Trade Well has *no* good faith basis to seek a construction lien under the Wisconsin statutes, much less to file one for the supposed purpose of "securing its claim" and the real purpose of preventing the sale of real estate over which it has no claim.

At best, the Notice is a lis pendens under Wis. Stat. § 840.10(1)(a), but that statute, too, explicitly states that it applies to "an action where relief is demanded affecting described *real property* which relief might confirm or change interests *in the real property*." Wis. Stat. § 840.10(1)(a) (emphasis added); *see also Ross v. Specialty Risk Consultants, Inc.*, 2000 WI App 258, ¶ 22, 240 Wis. 2d 23, 621 ("We agree with concerns that the application of lis pendens must be strictly limited to actions directly seeking to obtain title to or possession of specific real estate); *Waukesha State Bank v. Village of Wales*, 188 Wis. 2d 374, 386, 525 N.W.2d 110 (Ct. App. 1994) ("The purpose of a lis pendens is to give constructive notice to third parties of pending judicial proceedings *involving real estate*.") (emphasis added). By the terms of the amended complaint, this action seeks return of, and damages for, *personal* property. (*See* Am. Compl. (dkt. #32).) Trade Well has demanded no relief that "might confirm or change interests in . . . real property," making Wis. Stat. § 840.10 inapplicable on its face.

Even more troubling to this court is the act of Trade Well and its counsel in filing a lien based on the pendency of the present lawsuit, since Trade Well's claimed right is to personal property that this court has now deemed abandoned. This means that Trade Well's only remaining claim against UCB is for monetary damages, not for *any* property, real or personal, that might remain in the hotel or on the land about to be sold by UCB.

The icing on a truly rancid cake is that, even if the lis pendens statute *were* applicable, Attorney Salem is not a member of the Wisconsin State Bar, something that statute requires before he could authenticate the lis pendens pursuant to Wis. Stat. § 706.06.  *See* Wis. Stat. § 840.10(1)(b); 1 Wis. Prac., Methods of Practice § 10:11 (5th ed.).  So, instead, Salem signed and filed the notice with a reference to his *pro hac vice* status before this court in this case.  A first year law student would know the difference between that status and admission to a state bar.

Given these facts, the court held a telephonic conference on March 14, 2014, and ordered Salem to file a response to UCB's motion to strike the lis pendens by Monday, March 17, and to show why Trade Well and Salem personally should not be held in contempt for filing the Notice without any arguable right to do so.  In response, Salem filed a declaration in which he represents that he has become "aware" through various hearsay statements that UCB is near insolvency and that it was attempting to render itself "judgment proof" by selling the hotel property for less than its actual value.[2]  Trade Well and Salem still offer *no* justification for filing a *construction lien* under Wis. Stat. § 779.06 when no construction is involved in this case; nor any justification for filing a *de facto* lis pendens in an action involving personal, rather than real, property; nor any explanation for Salem's outrageous misbehavior in invoking this lawsuit and his *pro hac vice* status in it to authenticate the lien document as required by Wis. Stat. § 840.10(1)(b).

---

[2] Defendant has moved to strike the inadmissible portions of Salem's declaration. (Dkt. #68.)  That motion is granted.  Not only does Trade Well concede that the testimony within the declaration is hearsay (*see* Pl.'s Br. Opp'n (dkt. #70) ¶ 2), even if admissible, it is still entirely immaterial to the validity of the "lien."

4

This is not the first time Attorney Salem has fallen far short of the court's expectations. His latest misconduct in this matter is more deeply troubling still. He has abused his position as an attorney and has used both this court's name and his *pro hac vice* privileges in this case to file a purported "lien" with no legal authority to do so. And, although given the opportunity to explain why he should not be held in contempt, Salem has failed to offer any defensible reason for his conduct and his flagrant disregard of Wisconsin law. Accordingly, the court will exercise its inherent authority to hold Salem in contempt, deny his continued *pro hac vice* status in this court, refer him for disciplinary action by the States of Wisconsin and New York, and fine him $500.

As for the "lien" itself, the court has no obvious authority to grant UCB's motion to strike it entirely, because the "lien" is not before this court in this lawsuit. Nevertheless, UCB is certainly entitled to some immediate relief and welcome to seek more.[3] The court will grant UCB leave to file a counterclaim seeking a temporary restraining order, preliminary injunction, permanent injunction and damages related to the filing of the "lien."[4] In light of the frivolous nature of that document, the court will also give Trade Well seven days either to withdraw the "lien" or, in the alternative, to file a bond in the full amount of the sale price of the hotel. Finally, within 10 days, Trade Well must retain and arrange for the appearance of new counsel already admitted in good standing to practice

---

[3] UCB has also asked for its costs jointly and severally against Trade Well and Salem related to the motion to strike the notice of lien. The court will grant that motion against Salem as a further sanction against an officer of the court based on his representation that he is willing to cover the costs: "[I]f it is determined that I wrongfully filed the Lis Pendence/Lien, then the Lien is defective and I am prepared to pay the financial los[s] the delay cost UCB and the UCB's attorney's fees for removing the Lien."

[4] Filing a lien or lis pendens that the plaintiff knows or should have known is false, a sham or frivolous is actionable in damages. Wis. Stat. § 706.13; *see e.g., Briesemeister v. Lehner*, 2006 WI App 140, ¶ 40, 295 Wis. 2d 429, 720 N.W.2d 531 (lis pendens); *Tym v. Ludwig*, 196 Wis. 2d 375, 538 N.W.2d 600 (construction lien).

before this court to represent it in this case. Should Trade Well fail to comply with these requirements, the court will schedule an expedited, in-person hearing on the entry of a preliminary injunction, the potential for holding Trade Well itself in contempt of court and/or dismissal of Trade Well's affirmative claims in this case.[5]

Trade Well has also moved for an order to "compel the protection of evidence" by prohibiting UCB from discarding or altering its personal property, which apparently has still not been removed from the hotel. (Dkt. #55.) This motion will be summarily denied. As already discussed, Trade Well has not only had ample opportunity to inspect the subject equipment, but acknowledged that its expert already inspected and documented the alleged damage to its property in a subsequent report. (*See* Mot. Compel (dkt. #55) 2.) Furthermore, by failing to remove the property, Trade Well formally abandoned it at the end of January pursuant to this court's order. (Opinion & Order (dkt. #36) ¶ 3.)

Trade Well's contrary representation that "[i]t was understood that after Plaintiff documented the damaged property that it would be abandoned to the Defendant *and that UCB would incur the cost of moving it and storing it in a warehouse as evidence for trial*" (Salem Decl. (dkt. #61) ¶ 17) is both baseless and disingenuous. The court expressly *declined* to order such a result:

> Plaintiff also requests that the court compel defendant to pay for moving and storing the property and, apparently, that it order defendant to be responsible for finding a company willing to do so. The court will deny that request. As the court explained at the last hearing, plaintiff has a clear choice: (1) it can determine that the damaged property retains enough value to justify the costs of moving, storing and treating it; or (2) it

---

[5] The court's only hesitation in scheduling such a hearing now is the failure of UCB to pursue a counterclaim to date and the possibility that Trade Well might have been following the extraordinarily bad legal counsel of Attorney Salem.

> can abandon the property, recognizing that defendant may then argue that it failed to mitigate its damages.

(Opinion & Order (dkt. #49) 1-2.) Trade Well offers no reason to revisit that determination.

ORDER

IT IS ORDERED that:

(1) plaintiff Trade Well International's Motion to Compel the Preservation of Evidence (dkt. #55) is DENIED;

(2) defendant United Central Bank's Motion to Strike Notice of Lien and for Further Relief (dkt. #56) is GRANTED IN PART and DENIED IN PART as set forth above;

(3) defendant's Motion to Strike Inadmissible Portions of the Declaration of Maurice J. Salem (dkt. #68) is GRANTED;

(4) Attorney Salem is held in contempt of this court and ordered to pay $500 to the clerk of court and UCB's actual attorneys' fees incurred by his filing the lien that is the subject of UCB's motion to strike in this court; and

(5) the clerk of court is directed to forward this Opinion and Order to the enforcement authorities responsible for the practice of law in the States of Wisconsin and New York for possible sanction for filing a wholly frivolous lien, bad faith interference in a legitimate commercial transaction through misuse of legal process, fraud and related unprofessional conduct.

Entered this 4th day of April, 2014.

BY THE COURT:

_____
WILLIAM M. CONLEY
District Judge