# Appeal Docket No.: 14-1907

---

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

---

TRADE WELL INTERNATIONAL,
a Pakistan Corporation,
                                    Plaintiff,
                    and

MAURICE J SALEM,
                                    Appellant.
            **v.**

UNITED CENTRAL BANK,
        a Texas Corporation,
                                    Defendant-Appellee.

---

**Appeal from the United States District Court, for the Western District of Wisconsin.**
**Judge William M. Conley, Case No. 12-cv-701**

---

# BRIEF FOR APPELLANT

---

**Dated: July 7, 2014**,

Maurice J. Salem,
Attorney at Law
Appellant, *pro se*
7156 West 127th Street, B-149
Palos Heights, IL 60463
Tel. (708) 277-4775
Fax. (708) 357-4029
Email: salemlaw@comcast.net

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 14-1907

Short Caption: Trade Well International v. United Central Bank., Case No. 12-cv-0701

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[ ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):
Trade Well International Company.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Law Offices of Salem and Associates, P.C., 7156 W. 127th St., B-149, Palos Heights, IL. 60463

(3) If the party or amicus is a corporation:

    i)       Identify all its parent corporations, if any; and
           None

    ii)      list any publicly held company that owns 10% or more of the party's or amicus' stock:
           None

Attorney's Signature:  /s/Maurice J. Salem                    Date: 05/01/2014

Attorney's Printed Name: Maurice J. Salem

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** [X]  **No** [ ]

Address: 7156 W. 127th St., B-149, Palos Heights, IL. 60463

Phone Number: (708) 277-4775                    Fax Number:  (708) 357-4029

E-Mail Address: salemlaw@comcast.net

rev. 01/08 AK

# <u>TABLE OF CONTENTS</u>

<u>Section</u>                                                          <u>Page#</u>

Disclosure Statement                                              i

Table of Contents                                                ii

Table of Authorities                                              1

Jurisdictional Statement                                         4

Statement of Issues Presented                                    5

Statement of Case                                                5

Summary of Argument                                             12

Legal Standard of Review                                        15

Argument                                                        16

    I.    The District Court Judge did not have any legal basis
to hold attorney Salem in contempt for filing a lien
because this act did not violate any court order
and it did not obstruct the administration of justice.      16

        A.    Defining Contempt of Court.                      16
        B.    There was no prior court order that Salem failed
to comply with.                                             21
        C.    Salem's act of filing a lien was *not* clandestine
and it did not obstruct the administration of
justice.                                                    25

    II.    The District Court Judge's factual basis for holding
Salem in contempt was clearly erroneous.                    29

        A.    Clearly erroneous fact-finding.                  29

B.     Filing the lien while not being a Wisconsin
state attorney.                                31
C.     Salem's justification for filing the lien.       32

Conclusion                                                    35

Certificate of Compliance with F.R.A.P 32(a)(7)               36

Certificate of Compliance with Rule 30(d)                     36

Circuit Rule 31(e) Certificate                                36

Certificate of Service                                        36

Required Short Appendix to the Brief.                         37

# TABLE OF AUTHORITIES

**CASES**                                                                 **Pages**

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).            16, 17

*Bailey v. Roob*, 567 F.3d 930, 935 (7th Cir. 2009)                       22

*Bolte v. Home Ins. Co.*, 744 F.2d 572, 573 (7th Cir.1984)               4

*Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485,
    514 n.31 (1984)                                   15

*Briesemeister v. Lehner*, 2006 WI App 140                                27

*Carr v. Allison Gas Turbine Div., Gen. Motors Corp.*, 32 F.3d
    1007, 1008 (7th Cir. 1994)                         31

*Chambers v. NASCO, Inc.,* 501 U.S. 32, 55 (1991)                         17, 21

*Clark Equip. Co. v. Lift Parts Mfg. Co. Inc.*, 972 F.2d 817,
    820 (7th Cir.1992)                                 4

*Cooper Indust., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424,
    436 (2001)                                        15

*Crews & Assoc., Inc. v. United States*, 458 F.3d 674,
    677 (7th Cir.2006).                                4

*FDIC v. Amrish Mahajan et al.*, Case No. 11-CV-7590 (US District
    Court, Northern District of Illinois)             11, 34

*FTC v. Trudeau*, 662 F.3d 947, 950 (7th Cir. 2011)                       21

*Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418 (1911).               17, 18

*Harris v. United States*, 382 U.S. 162, 164-67 (1965).                   13, 20

*Hicks v. Feiock*, 485 U.S. 624, 632 (1988)                               18

*International Union, UMWA v. Bagwell*, 512 U.S. 821,
    831-833 (1994).                                                13, 19,20,21

*Lance v. Plummer*, 353 F.2d 585, 592 (5th Cir. 1965),
    *cert. denied*, 384 U.S. 929 (1966).                          17

*Malec v. Sanford,* 191 F.R.D. 581, 584 (N.D. Ill. 2000)          33

*In re McConnell*, 370 U.S. 230, 234 (1962).                      14, 26

*In re Michael*, 326 U.S. 224, 228 (1945).                        26

*Nat'l Spiritual Assembly of Baha'is of the U.S. Under Hereditary
    Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of the
    U.S., Inc.*, 628 F.3d 837, 847 (7th Cir. 2010)                14, 21

*In re Resource Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010)   22

*In re Rimsat Ltd.*, 212 F.3d 1039, 1046 (7th Cir. 2000)          21

*Sacher v. United States*, 343 U.S. 1, 8 (1952).                  20

*S.E.C. v. Hyatt,* 621 F.3d 687, 692 (7th Cir. 2010)              22

*Shillitani v. United States*, 384 U.S. 364, 371 (1966).         17

*Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)               33

*In re Sokolik*, 635 F.3d 261, 269 & n.2 (7th Cir. 2011)          21

*Tym v. Ludwig*, 196 Wis. 2d 375                                  27

*United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)      16

*United States v. Wilson*, 421 U.S. 309, 319 (1975).             18, 20

*Trade Well International v. United Central Bank*, Case No.
    12-cv-0701 (US District Court, Northern District of Illinois)  7, 30

| **Statutes & Rules** | **Pages** |
|---|---|
| 18 U.S.C. § 401 | 25 |
| 28 U.S.C. § 1291 | 4 |
| 28 U.S.C. § 1332(a)(3) | 4 |
| *Fed R. Evid. P.* Rule 1101(b) | 26 |
| *Fed, R. Crm. P.*, Rule 42 | 13 |

## Jurisdictional Statement

The District Court has international diversity jurisdiction over the dispute in this action, 28 U.S.C. § 1332(a)(3).  The amount in controversy exceeds $75,000, exclusive of interests and costs.  According to the Securities and Exchange Commission of Pakistan (SECP), established under the Securities and Exchange Commission of Pakistan Act 1997, Plaintiff Trade Well International is a Private Limited Company, (PVT) Limited, with five (5) owners who are all citizens of, and reside in, Pakistan, and the Company's principle place of business is in Pakistan.

   Defendant United Central Bank is a Texas Corporation with its principal place of business being in Texas.  Thus, there is complete diversity and the amount in controversy exceeds $75,000, exclusive of interest and costs.

The Court of Appeal has jurisdiction under 28 U.S.C. § 1291, in that the decision makes critical comments against Plaintiff-Appellant's attorney and imposes monetary sanctions. *Crews & Assoc., Inc. v. United States*, 458 F.3d 674, 677 (7th Cir.2006); *Clark Equip. Co. v. Lift Parts Mfg. Co. Inc.*, 972 F.2d 817, 820 (7th Cir.1992) (citing *Bolte v. Home Ins. Co.*, 744 F.2d 572, 573 (7th Cir.1984)).

(i)     Dates of Entry of orders on appeal: April 4 & 22, 2014.
(ii)    Motion to Reconsider was filed on April 8, 2014.

4

    (iii)    Order denying Motion entered on April 22, 2014.

    (iv)    Notice of Appeal filed: April 23, 2014.

    (v)    N/A

## Statement of Issues Presented

1.    Whether the District Court Judge had any legal basis to hold attorney Salem in contempt?

2.    Whether the District Court Judge's factual basis to hold attorney Salem in contempt was clearly erroneous?

## Statement of Case

On September 25, 2012, Plaintiff Trade Well International ("Trade Well") commenced this action to recover its personal property, which is equipment used for the operation of a hotel, held in a hotel owned by the Appellee, United Central Bank ("the Bank"). (Doc. 32, A. Compl. ¶5, App.1). The Bank refused to permit the turnover of the property to Trade Well during a state court foreclosure proceedings in 2010 and 2011, and even after the Bank took legal possession of the hotel on July 31, 2012, and received a written demand for the property on that same day, the Bank continued to refuse to return Trade Well's property. (Doc. 32, A. Compl. ¶4, App. 2).

More than a year after this action was commenced, the District Court rendered a decision on a Rule 12(b) motion, which resulted in the filing if an

Amended Complaint, (Doc. 32, A. Compl. ¶5, App.1), and thereafter the parties proceeded to discovery.  During discovery, on April 4, 2014, Counsel for Trade Well, Appellant Maurice J. Salem ("Salem"), was held in contempt for filing a lien on the Bank-owned hotel to protect his client's claim.  (Doc. 71, App. 128).

Although the District Court Judge did not specifically identify the reasons for holding Salem in contempt, he mentioned three reasons that are all related to the one act of Salem filing the lien.  The reasons mentioned were that the lien was filed two days before a scheduled closing date, Plaintiff's personal property in the hotel was abandoned and Salem violated a Wisconsin state statute that permit only attorneys admitted in the state to file liens.  (Doc 71, App. 128).

In all prior cases where an attorney was held in contempt, it was for either failing to comply with a court order or performing a secret act that obstructed the administration of justice.  In this case, there was no prior court order that Salem failed to comply with and Salem's act of filing the lien, which resulted in contempt of court, was *not* performed in secret and it did *not* obstruct the administration of justice.  Moreover, Salem took full financial responsibility for any financial harm that the lien may cause the

Bank.  Under these circumstances no other attorney has ever been held in contempt of court in this country.

The District Court Judge not only had no legal basis to hold Salem in contempt, he also had no factual basis to do so.   Salem had no possible means of knowing that the property he placed a lien on was scheduled for closing two days after the lien was filed.  The property was not listed in the public listings, MLS, and it was not even listed for sale of the Bank's own website where the Bank lists for sale all of the property it owns via foreclosure.  The order declaring that Plaintiff abandoned its property in the hotel did not prohibit Salem from filing the lien.  Salem filed the lien with the approval of a county clerk.

There was absolutely no evidence presented to support the Bank's claims of the "urgency of timing" and "irreparable harm."  In fact, this Court can take judicial notice of the Counterclaim the Bank subsequently filed in this action, which does not allege any financial harm. (*Trade Well International v. United Central Bank*, Case No. 12-cv-0701).

Salem's justification for filing the lien is set forth in the Statement of Case below and it was not refuted.  There is overwhelming evidence that the Bank was doing insider deals and preparing for the FDIC to take it over, just as its predecessor, Mutual Bank, was taken over.  Even if Salem's

justification for filing the lien was baseless, he was willing to take financial responsibility for it.  Even if Salem's act of filing the lien was intended to financially harm the Bank, then this should result in a money claim against Salem, rather than holding him in contempt of court.

It is undisputable that the act for which Salem was held in contempt, filing a lien, did not violated any court order, did not obstruct the administration of justice and that Salem took responsibility for any financial harm that may result.  There is no legal basis to hold an attorney in contempt under these circumstances.  This case is unprecedented.


The following are the relevant facts that led Salem to file the lien and that led to the contempt order.

The subject hotel was kept without heat or air conditioning since it was shutdown in August 2010.  This caused the mold damage to Trade Well's property in the hotel.  On November 4, 2013, the Bank finally admitted that the property in the hotel belonged to Trade Well and requested that it take its property.  (Doc. 27, App. 42).  The District Court order that Trade Well had to remove its property from the hotel by January 4, 2014, and any property remaining shall be abandoned to the Bank. (Doc. 36, App. 55).

On December 23, 2013, Salem filed a motion, with a declaration and three exhibits, explaining why Plaintiff could not remove its property from the hotel. (Doc. #43, App. 57).  The motion contained three exhibits showing one moving company refusing to do the job because of mold on the property, and two other companies requiring special moving and storage arrangements, due to the mold on the property, which were very costly.

On January 3, 2014, an order was entered requiring Trade Well to document the damage to its property on or before January 24, 2014, at which time the equipment will be abandoned to the Bank. (Doc. #49, App. 71).  On January 22, 2014, Plaintiff's mold expert inspected the property and produced a report confirming the mold damage, (Doc. 73, Exhibit A, App. 153).  On that same day the Bank had its expert inspect the property and he produced a report saying that there was *no* mold damage, (Doc. 73, Exhibit B, App. 172).  The two expert reports contradicted each other; one expert says the property was damaged by mold, while the other says it was not damaged.

After the property was abandoned to the Bank, Salem was informed that the Bank had placed several large dumpsters in front of the hotel and that it was discarding the subject property.  Salem moved to stop the Bank from doing so by filing a motion to preserve the evidence.  (Doc. 55, App.

73).  If the property was discarded, the only evidence left for the jury will be the two conflicting expert witnesses.  Preserving the evidence would permit the jury to see and smell whether the property was damaged.

Salem had attempted to call the Bank's attorney before filing the motion to preserve the evidence, but for over two week his telephone calls were not returned.  (Doc. 61, App. 97)  On March 11, 2014, Salem filed a motion to preserve the evidence.  (Doc. 55, App. 73).  Whether or not Plaintiff's property was damaged is the most important contested issue in this case.  The Plaintiff alleges that its equipment was damaged by the Bank's conduct.  However, the Bank claims that the equipment is not damaged in its: (1) Answer to the Amended Complaint, (Doc. 38, App. 21), (2) in its motion to compel Plaintiff to remove the equipment from the hotel (Doc. 27, App. 42), and (3) by its expert witness' inspection report. (Doc. 73, Exhibit B, App. 172).

The specific facts and evidence that caused Salem to file the lien were set forth in Salem's Declaration (Doc. #61-67, App. 97).  The following is a summary of the evidence and the facts alleged in his Declaration:

1. A December 16, 2013, Los Angeles Times article describing the Bank's parent corporation, Central Bancorp, as "troubled" and about to be sold, (Exhibit A, Doc. 62).
2. If the Bank was taken over by the FDIC, then under FIRREA all the creditors would get is the remaining assets, if any.

3.  The Bank had previously purchased a distressed bank in 2009, Mutual Bank, which went through this situation and left many of its creditors with great financial loss. (See the pending action in the US District Court, Northern District of Illinois, *FDIC v. Amrish Mahajan et al.*, Case No. 11-CV-7590.)

4.  A former Assistant Vice President of the Bank stated that the Bank was becoming insolvent and over leveraged and that it is preparing to be taken over by the FDIC; Exhibit B is his business card.  Mr. Lalani also said that the Bank was making many insider deals where it was rejecting higher offers for properties and accepting lower offers.

5.  Mr. Masrullah Khan, who was the President of the Bank's Devon Branch in North Chicago, told Umar Paracha that the Bank was *not* selling its foreclosed property to the highest bidder.   He witnessed many instances where property was sold to lower offers via insider deals; in one particular instance, a four million dollar offer to purchase a property in North Chicago was made, but he was directed to sell it for two million to another buyer.  He said that the Bank does not care because "it is FDIC money."

6.  The hotel, in which Plaintiff's property is located, was purchased by Dells Estate LLC, in 2008, for seven (7) million dollars.  Exhibit C is a closing documents showing that on May 18, 2008, the hotel was purchased for seven million dollars.  However, now the Bank wants to sell the hotel for one million dollars, rather than 2.5 million dollars.

7.  Exhibit D in the Amended Complaint, which is also Exhibit D attached [to the Declaration Doc. 61], shows that there was a buyer in 2012 willing to pay one million dollars for Plaintiff's property and this is the same buyer who signed a contract to purchase the hotel for two million dollars, Exhibit E.  This buyer was willing to place the money in escrow if only the Bank signed the contract, but the Bank refused.  Subsequently, this buyer raised his offer by a half of a million dollars, to 2.5 million dollars, but again the Bank refused. Exhibit F, is a March 15, 2014, email from this buyer's real estate agent indicating that his client is still willing to purchase the hotel.  However, the Bank still wanted to sell the hotel for only one million dollars to Mr. Edgar Krause. (Doc. 61-67, App. 97).

Prior to the lien being recorded, on March 12, 2014, it was served on the Bank on February 3, 2014, (Doc. 57-1, App. 78).  When it was recorded Salem did not know that there was a closing schedule two days later, on March 14, 2014, because the hotel was not listed for sale with any realtor on the MLS, and it was not listed for sale on the Bank's own website, where it lists its foreclosed property for sale. (Doc. 61, App. 97).

On April 4, 2014, the District Court Judge entered an order holding Salem in contempt for filing the lien on the hotel because it was filed two days before a scheduled closing, it requires a Wisconsin state attorney to file such a lien and Plaintiff's property in the hotel was abandoned. (Doc. # 71, App. 128).

On April 22, 2014, the District Court Judge issued another order that revoked Salem permanent admission into the District Court and prohibited him from applying for readmission for three (3) years. (Doc. # 75, App. 197).  A Notice of Appeal from both of these orders was filed on April 23, 2014. (Doc. 76, App. 202).

## Summary of Argument

The District Court Judge held attorney Salem in contempt for filing a lien against a property owned by the Bank, for which Salem took responsibility for any financial harm that the Bank may sustain.  (Doc. 61,

App. 97)  Although the District Court Judge did not specifically identify the reasons for his action, he mentioned three reasons that all relate to the one act of Salem filing a lien to protect his client's claim.  (Doc. 71, App. 128) The act for which Salem was held in contempt, filing a lien, did not violated any court order, it did not obstruct the administration of justice and Salem took financial responsibility for any financial harm that may result.   There is no legal basis to hold an attorney in contempt under these circumstances. This case is unprecedented.

Based on the sanctions imposed and the fact that the act of filing a lien occurred outside the presence of the court, Salem was actually held in indirect criminal contempt.  Whenever a criminal contempt act is not committed in the actual presence of the judge, *Harris v. United States*, 382 U.S. 162, 164-67 (1965), and *Fed, R. Crm. P.*, Rule 42(b), require that indirect contempt shall be prosecuted only after having provided the accused with notice of all the following: the time place of the contempt hearing, the essential facts constituting the criminal contempt charge, the criminal nature of the proceeding. *International Union, UMWA v. Bagwell*, 114 S.Ct. 2552, 2560 (1994).  The District Court Judge erred because Salem was not afforded any of these procedural safeguards in this case.

Before a court may enter a contempt finding, there must be clear and convincing evidence that: there was an unambiguous command; the alleged contemnor violated it; "the violation was significant, meaning the alleged contemnor did not substantially comply with the order" and the alleged contemnor did not make a reasonable and diligent effort to comply. See, e.g., *Nat'l Spiritual Assembly of Baha'is of the U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of the U.S., Inc*., 628 F.3d 837, 847 (7th Cir. 2010). In this case, there was no prior court order that Salem failed to comply with.

The Supreme Court stated that there must be a finding of "an actual Obstruction of Justice" in all § 401(1) cases. *In re McConnell*, 370 U.S. 230, 234 (1962). In this case, there was no obstruction of justice alleged.

In addition, the District Court Judge had no factual basis to hold Salem in contempt. Salem had no possible means of knowing that the property was scheduled for closing two days after the lien was filed. The property was not listed in the public listings, MLS, and it was not even listed for sale of the Bank's own website where it lists for sale the property it owns via foreclosure. The order declaring Plaintiff's property as abandoned did not prohibit Salem from filing a lien, and a clerk in the county approved Salem filing the lien, even though he was not a Wisconsin state attorney.

14

Finally, Salem's justification for filing the lien was not refuted.  There is overwhelming evidence that the Bank was doing insider deals and preparing for the FDIC to take it over, just as its predecessor, Mutual Bank, was taken over.  Even if Salem's justification for filing the lien was baseless, he was willing to take financial responsibility for it.  There was no evidence or facts alleged that the act of filing the lien resulted in irreparable harm.  Ultimate, the District Court Judge erred as a matter of law because the act of filing the lien did not violated any prior court order and it did not obstruct the administration of justice.

## Legal Standard of Review

The first issue presented requires this Court to review whether the District Court Judge had any legal basis to hold Salem in contempt.  Questions of law require *de novo* review. Under a *de novo* standard of review this Court is under no obligation to adopt any legal conclusions previously reached by a lower court. *Cooper Indust., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 436 (2001).  The Supreme Court has explained that the definition of "*de novo*" is when "a reviewing court makes an original appraisal of all evidence to decide whether or not it believes that judgment should be entered for plaintiff." *Bose Corp. v. Consumers Union*

*of U.S., Inc.*, 466 U.S. 485, 514 n.31 (1984); see 6 Jacob A. Stein, Glenn A.

Mitchell & Basil J. Mezines, Administrative Law § 51.01[2], at 51-101

(2009) (*de novo* review is the broadest scope of review).

The second issue presented is whether the District Court Judge made

wrongfully factual determinations in holding Salem in contempt.  Questions

of fact require a clearly erroneous standard of review.  The Supreme Court

has explained that the definition of clearly erroneous is "when although there

is evidence to support it, the reviewing court on the entire evidence is left

with the definite and firm conviction that a mistake has been committed."

*Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (citing *United States*

*v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)

<u>**Argument**</u>

I.    **The District Court Judge did not have any legal basis to hold
      attorney Salem in contempt for filing a lien because this act did
      not violated any court order and it did not obstruct the
      administration of justice.**

<u>**A. Defining Contempt of Court.**</u>

Contempt of court is defined as any act, which is calculated to

embarrass, hinder, or obstruct the administration of justice, or which is

calculated to lessen the authority or dignity of the court. *Black's Law*

*Dictionary* 288 (5th ed. 1979).  In this case, the Appellant Maurice J. Salem

16

("Salem") was held in contempt for the act of filing a lien on a property owned by the Appellee United Central Bank ("the Bank").

The District Court Judge did not indicate whether the contempt was civil or criminal, and he did not indicate whether it was direct contempt or indirect contempt. However, based on the sanctions imposed and the fact that the act, which resulted in the contempt, occurred outside the presence of the Judge, Salem was actually held in indirect criminal contempt.

Civil sanctions must be remedial or coercive. *Lance v. Plummer*, 353 F.2d 585, 592 (5th Cir. 1965), *cert. denied*, 384 U.S. 929 (1966). Once coercive sanctions lost their coercive effect, they are no longer considered to be civil; therefore, the sanctions must be terminated at that point. In cases where the contemnor finds himself literally incapable of compliance with the court order, then "civil" sanctions would no longer serve any purpose other than to punish the contemnor. *Shillitani v. United States*, 384 U.S. 364, 371 (1966).

The power to punish acts of contempt is inherent in all courts. *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991); *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418 (1911). "This inherent authority is necessary for enforcing court orders and judgments, as well as maintaining basic order in the court. For this reason, 'courts of justice are universally acknowledged to

be vested, by their very creation, with power to impose silence, respect, and decorum, in their present, and submission to their lawful mandates.'" *Chambers* 501 U.S. at 43.

Notwithstanding the inherent nature of the contempt power, the US Supreme Court has suggested that the exercise of the power be limited to the "least possible power adequate to end proposed." *United States v. Wilson*, 421 U.S. 309, 319 (1975). The Court stated that the contempt sanction should be considered to be civil in nature if it is remedial and intended to benefit the complainant. *Gompers*, 221 U.S. at 441. It explained that a contempt sanction is civil if "intended to be used for coercing the defendant to do what he had refused to do." *Id*. at 442.

If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court. However, a fine paid to the court is also remedial when the defendant can avoid paying it by simply performing the affirmative action required by the court. *Hicks v. Feiock*, 485 U.S. 624, 632 (1988). In *Gompers*, the Court stated that civil contempt is appropriate for coercing future compliance with a previously violated mandatory court order, while criminal contempt is appropriate for punishing a past violation of a prohibitory court order. *Gompers*, 221 U.S. at 441.

18

In the case, *International Union, United Mine Workers of America v. Bagwell*, 114 S.Ct. 2552, 2558 (1994), the Supreme Court addressed the distinction between civil and criminal contempt.  The Court rejected a lower's courts ruling that the sanctions were civil, and held that to levy such sanctions will require criminal procedural protections. *Id.* at 2560-61.

In this case, there were two sanctions that were imposed by the District Court Judge against Salem.  The first sanction is a $500 fine to be paid to opposing counsel (Doc. 71, App. 128 ); there is no dispute that this is civil.  However, the second sanction was revoking Salem's admission in the District Court, removing him from the case and prohibiting him from readmission into the District Court for three (3) years. (Doc. 75, App. 197).

This sanction constitutes criminal contempt because it does not benefit the complainant for Salem not to be able to practice law in the District Court for three years.  There is no act for Salem to perform in order to be in compliance with a previously violated court order for the sanction to be remedial; in fact there was no previous court order that Salem violated. The sanction of revoking Salem's admission in the District Court and prohibiting him from applying for readmission for a three (3) year period was intended solely to punish Salem and thus, the contempt in this case

should be criminal contempt, which require criminal procedural protections. *Id*.

In *Bagwell*, the Supreme Court states that: "[d]irect contempt that occur in the court's presence may be immediately adjudged and sanction summarily." *Bagwell*, 114 S.Ct. 2552, 2557 n.2 (1994); also see *Fed. R. Crim. P.* 42. However in this case the act for which Salem was held in contempt, filing a lien, did not occur in the presence of the court. Thus, the act can only result in indirect contempt. *Id*. Summary process is justified only in cases of necessity where there is a need for immediate vindication of the courts dignity and authority. *United States v. Wilson*, 421 U.S. 309, 318 (1975); *Harris v. United States*, 382 U.S. 162, 164 (1965). "Summary punishment always, and rightfully, is regarded with disfavor and, if imposed in passion or pettiness, brings discredit to the court as certainly as the conduct it penalizes." *Sacher v. United States*, 343 U.S. 1, 8 (1952).

Whenever a criminal contempt is not committed in the actual presence of the judge, *Harris* 382 U.S. at 164-67, and *Fed, R. Crm. P.*, Rule 42(b), require that indirect contempt shall be prosecuted only after having provided the accused with notice of all the following: the time place of the contempt hearing, the essential facts constituting the criminal contempt charge, the criminal nature of the proceeding. *Bagwell*, 114 S.Ct. at 2560.

In this case, Salem was actually held in indirect criminal contempt because the act for which he was held in contempt was performed outside the presence of the District Court Judge and the sanctions did not all benefit the complainant, but were intended to punish Salem.  The sanction of revoking Salem's admission in the District Court and prohibiting him from seeking readmission for another three (3) years is an exercise of the court's indirect criminal contempt power.  Thus, District Court Judge erred by holding a summary proceeding and granting summary punishment, without an evidentiary hearing or a trial. (Doc. 71, App. 128).

**B.  There was no prior court order that Salem failed to comply with.**

The District Court Judge seems to imply, although not expressly or specifically, that Salem's act of filing the lien was a violation of his order declaring Plaintiff's equipment abandoned (Doc. # 71, page 1, line 8, App. 128).  If that is the case, then the District Court Judge erred as a matter of law.

In a civil contempt, before a court may enter a contempt finding, there must be clear and convincing evidence that: there was an unambiguous command; the alleged contemnor violated it; "the violation was significant, meaning the alleged contemnor did not substantially comply with the order" and the alleged contemnor did not make a reasonable and diligent effort to

comply. See, e.g., *Nat'l Spiritual Assembly of Baha'is of the U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of the U.S., Inc*., 628 F.3d 837, 847 (7th Cir. 2010); see also, *In re Resource Tech. Corp*., 624 F.3d 376, 387 (7th Cir. 2010). To reemphasize the latter point, a court may not find a person or entity in civil contempt unless it "willfully refused to comply with a court order" or failed to be "reasonably diligent and energetic in attempting to accomplish what was ordered." *Bailey v. Roob*, 567 F.3d 930, 935 (7th Cir. 2009) (internal quotation marks omitted).

Decisions to hold a person in contempt or to impose sanctions are reviewed for abuse of discretion. *FTC v. Trudeau*, 662 F.3d 947, 950 (7th Cir. 2011); *In re Sokolik*, 635 F.3d 261, 269 & n.2 (7th Cir. 2011) (citing *In re Rimsat Ltd*., 212 F.3d 1039, 1046 (7th Cir. 2000)); see also, e.g., *Chambers v. NASCO, Inc.,* 501 U.S. 32, 55 (1991). An abuse of discretion occurs if the court based its decision on an incorrect legal principle or clearly erroneous factual finding, see *Trudeau*, 662 F.3d at 950, or if the court "reached an unreasonable result." *In re Sokolik*, 635 F.3d at 269.

Federal courts have both inherent and statutory authority to punish for contempt and to coerce compliance with their orders. *International Union, UMWA v. Bagwell*, 512 U.S. 821, 831-833 (1994).  To prevail on a request for a contempt finding, the moving party must establish by clear and

convincing evidence that: (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply. *S.E.C. v. Hyatt,* 621 F.3d 687, 692 (7th Cir. 2010).

In this case, the order requiring Plaintiff to abandoning the property did so because Plaintiff could not move the property and store it for trial, without incurring great costs. The order does not explicitly or implicitly prohibits Salem from filing a lien to protect his client's claim. (Doc. 36, App. 55). In fact, the District Court's order on the Bank's motion to strike the lien permitted the Plaintiff to post a bond for the sale's price of the hotel (Doc. 71, page 5, line 16, App. 128). Thus, by permitting a bond to be posted to secure Plaintiff's claim or prohibit the sale of the hotel, the District Court Judge believed Salem was justified in filing a lien, but that a bond was required.

Plaintiff abandoned the equipment for the reasons stated in its December 23, 2103, Motion, (Doc. #43, App. 57). Emails from three moving companies were attached to said motion. (See Exhibits A, B & C to said motion, Doc. #43, App. 57). To move the equipment and store it in a

warehouse, with the mold on it, would have been very costly. Plaintiff's

expert report confirms the moving companies' concerns about the mold,

using impartial laboratory testing. (Doc. 73, Exhibit A, App. 153).

Prior to Salem filing the lien on March 12, 2014, he had filed a motion to

preserve the evidence (Doc. 55, App. 73). The motion argues that although

Plaintiff abandoned the property, it did not consent for the Bank to discard it

in dumpsters. In said motion, Salem set forth the law that requires the Bank

to preserve the evidence. The subject property still remains as evidence

whether in possession of the Plaintiff or the Defendant. Notwithstanding the

documentation of damages that Trade Well procured, the equipment itself is

the best evidence to show whether it was damaged. Given the Bank's expert

report stating that the equipment was *not* damaged (Doc. 73, Exhibit B,

App.172), and the Bank's contention that the equipment is *not* damaged,

then whether Plaintiff can show the equipment was damaged at trial, without

the equipment itself, will be problematic.

It is in the Bank's interest to dispose of the equipment and rely on its

expert's report stating that the equipment was not damaged. This is

destruction of evidence that can only help the Bank. There can be no doubt

that in light of the competing expert reports the equipment itself will be

decisive evidence at trial.

The order declaring the equipment abandoned does not implicitly or explicitly prohibit Salem from filing a lien against the Bank's property. Pursuant to the above-cited case law on failure to comply with a court order, no plausible argument can be made that Salem violated any court order.

### C. Salem's act of filing a lien was *not* clandestine and it did not obstruct the administration of justice.

In all cases dealing with an attorney held in contempt, for reasons other than failure to obey a court order, the attorney performed a clandestine act that obstructed the administration of justice.  For example, attorneys who secretly interfere with opposing counsel's witnesses or who intentional hide evidence that they were obligated by law to disclose to the opposing side.

However, in this case, Salem's act of filing a lien was open to the public, with a 39-day notice to the opposing side.  (Doc. 57-1, App. 78).  The act of filing the lien was transparent and it did not obstruct the administration of the justice.

Pursuant to 18 U.S.C. § 401, a court shall have the power to punish by fine or imprisonment, in its discretion, such contempt of its authority, and none other, as:

(1) misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
(2) misbehavior of any of its officers in their official transactions;
(3) this obedience or resistance to its lawful writ, process, order, rule, decree, or command.

25

In order to establish a criminal violation of § 401(1), the following four elements must be established beyond a reasonable doubt:

> (1) misbehavior,
> (2) in or near the presence of the court,
> (3) with criminal intent,
> (4) That resulted in the obstruction of the administration of justice.
>     *Bagwell*, 114 S.Ct. at 2557.

The Supreme Court stated that there must be a finding of "an actual Obstruction of Justice" in all § 401(1) cases. *In re McConnell*, 370 U.S. 230, 234 (1962). The obstruction requirement is "a prerequisite to all criminal contempt." *In re Michael*, 326 U.S. 224, 228 (1945). The federal rule of evidence "applied generally to civil actions and proceedings, including . . . contempt proceedings except those in which the court may act summarily." *Fed R. Evid. P.* 1101(b).

In this case, Salem was held in contempt for filing a lien. This act did not violate any prior court order; it was not clandestine because the Bank had a 39-day prior notice and the act was public. The act was performed outside the presence of the District Court Judge and the sanction against Salem, revoking his admission in the District Court and prohibiting him from reapplying for three (3) years, clearly constitutes indirect criminal contempt. Ultimately, there were no facts alleged, no evidence presented and no argument made that the act of filing the lien obstructed the judicial process.

The District Court Judge stated in footnote #4 (Doc. 71, page 5, App. 132) that "[f]iling a lien or lis pendens that plaintiff knows or should have known is false, a sham or frivolous is actionable in damages." However, there were no facts cited by Bank or the District Court Judge to show that the lien was false or frivolous. In support of his contention, the District Court Judge cited: *Briesemeister v. Lehner*, 2006 WI App 140, ¶ 40. However, this case supports Salem; in *Briesemeister* the court stated:

> Although the *Briesemeisters* later were proved incorrect, they believed at the time that they filed the lawsuit and lis pendens that they had a contractual right to the property. A party has a right to protect what he believes to be his legal interest. *Cudd v. Crownhart*, 122 Wis. 2d 656, 662, 364 N.W.2d 158 (Ct. App. 1985). If that party's position ultimately is demonstrated to be incorrect, liability should not be imposed on that lone factor. *Id.* The Lehner group cites no other factors. The *Briesemeisters* and *McTernan* may have been mistaken, but we cannot say their actions were unjustified.

The *Briesemeister* court held that "[w]e also hold that there is no evidence that the Briesemeisters' filing of the lis pendens was frivolous or that their attempt to elevate their contract over that of the *Millsaps* and the *Lehner* group was improper." In this case, there is no evidence that the lien was frivolous as well.

In *Tym v. Ludwig*, 196 Wis. 2d 375, the case was remanded for trial, the court said:

> We conclude that this more reasonable rule is consistent with Wisconsin case law defining special damages. Special damages are

27

those occurring as a natural consequence of the wrongful conduct, but not so necessarily foreseeable as to be implied in law.[1]*See Univest Corp. v. General Split Corp.,* 148 Wis. 2d 29, 42, 435 N.W.2d 234, 239 (1989). Special damages may or may not be present as the result of the wrongful act—the proof depends on the factual circumstances of the case at hand. *State v. Boffer,* 158 Wis. 2d 655, 660, 462 N.W.2d 906, 908-09 (Ct. App. 1990). We hold that, when determining the necessary proof for special damages, the trial court must consider whether it is reasonable under the factual circumstances to expect the plaintiff to show that a slander of title prevented a particular sale. And, if such a requirement is not reasonable under the circumstances, the trial court must then determine the degree of particularity required. Therefore, we hold that the law firm was not entitled to judgment as a matter of law on the grounds relied upon *385 by the trial court and reverse the dismissal of the Tyms' cause of action on this basis.

Having determined the proper application of the law, we hold that it is not for this court to decide whether the facts of this case require the Tyms to prove a loss of a specific sale or whether the less narrow view should be used. We are satisfied that there are disputed issues of material fact, which must be resolved by the trier of fact before the determination can be made. We note that if there are disputed issues of material fact, they should be decided by the fact finder at trial, not by the appellate court. *See Landreman v. Martin,* 191 Wis. 2d 788, 801, 530 N.W.2d 62, 67 (Ct. App. 1995).

In both cases, which the District Court Judge relied upon, there was discovery on the issue of filing the lien and a determination on the merits via a trial.  In this case, there was no determination on the merit, no evidentiary hearing held to determine whether the lien was false or frivolous or that Salem knew or should known that the lien was false, a sham or frivolous.  In fact, there is overwhelming evidence to the contrary in Salem's Declaration,

28

(Doc. #61, App. 97, and see the above Statement of Case, ), which is
undisputed.

Most importantly, these two state court cases clearly show that a
monetary claim should be brought against a person who files a false or
frivolous lien, rather than holding him in contempt. [1]

## II.      The District Court's factual findings were clearly erroneous.

## A.  Clearly erroneous fact-finding.

The District Court Judge found that Salem filed a lien on March 12,
2014, knowing that there will be a closing two days later on March 14, 2014.
(Doc. 71, App. 128)  However, there were no facts alleged anywhere in the
record that show Salem knew there was going to be a closing on March 14,
2104.  Moreover, the lien itself has a certificate of services on it showing
that the Bank was served with the lien on February 3, 2014, which is 39 days
prior to the closing on March 14, 2014. (Doc. 57-1, App. 78).

When the lien was recorded on March 12, 2014, Salem did not know, and
could not have known, that there was a closing schedule two days later
because the hotel was not listed for sale with any realtor on the MLS and it

---

[1] The District Court Judge stated that "[t]his is not the first time attorney Salem has fallen
short of the court's expectations" on top of page five of its decision (Doc. #71, App. 128).  He
cited a prior case involving Salem, which dealt with a different issue: "vexation litigation"
concerning a 20-year old family inheritance dispute among eight (8) siblings.  In fact, most
family inheritance disputes involving a large number of siblings result in vexing litigation, but
vexing litigation is not an issue here.  There was no need for the District Court Judge to mention
this irrelevant case.

was not listed for sale on the Bank's own website, where it lists foreclosed property for sale.  (Doc 61, App. 97).  There was absolutely no evidence, or even facts alleged, in the record that show Salem knew of a closing scheduled on March 14, 2014.  This is a clearly erroneous summary fact finding by the District Court Judge.

Another clearly erroneous summary fact-finding was the Bank's contention that the lien required urgent action by the court because there was irreparable harm to the Bank.  However, there was absolutely no evidence presented to support the claims of the "urgency of timing" and "irreparable harm."  (See the Bank's Motion to Strike Lien, Doc. 56, App. 78)  In fact, this Court can take judicial notice of the Counterclaim the Bank subsequently filed in this action, where there was no financial harm alleged. (*Trade Well International v. United Central Bank*, Case No. 12-cv-0701) Finally, the lien and Salem's willingness to take financial responsibility for any harm the lien may cause to the Bank, deals only with money and this cannot be irreparable harm.

"Although the meaning of the phrase 'clearly erroneous' is not immediately apparent, certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be derived from our cases. The foremost of these principles… is that '[a]

30

finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).  *Carr v. Allison Gas Turbine Div., Gen. Motors Corp.*, 32 F.3d 1007, 1008 (7th Cir. 1994) (The clear-error standard "requires us appellate judges to distinguish between the situation in which we think  that if we had been the trier of fact we would have decided the case differently and the situation in which we are firmly convinced  that we would have done so.").  In this case, the above-mentioned factual determinations have absolutely no evidence to support them.

## B.  Filing the lien while not being a Wisconsin state attorney

The District Court Judge held Salem in contempt for, *inter alia*, filing a lien on March 12, 2014, in violation of a state statute, which requires only Wisconsin State attorneys to file such documents. (Doc. #71, App. 128).  In Salem's Declaration, (Doc. #61, App. 97), there is uncontroverted testimony that the person in charge of filing such documents at the county clerk's office, Mr. Brent Bailey, instructed Salem to obtain a number from the federal court, which shows his admission in that court, place the number on the lien and then he can file the lien.

Assuming Mr. Bailey's instructions were wrong and assuming Salem was wrong in filing the lien, then there can be no factual conclusion reached other than Salem and the clerk, Mr. Bailey, made a mistake.  Salem should have used a Wisconsin State attorney to file the lien, as he had intended to do, but for Mr. Bailey's instructions. (Doc. #61, App. 97).

Even if the act of filing the lien was a violation of a state law, then such an act cannot possibly reach the level of holding attorney Salem in contempt pursuant to the above-cited law.  Salem did not failed to comply with any court order by filing the lien and the act of filing the lien did not obstruct the administration of justice.  For these reasons, this Court should grant this appeal.

## C.  Salem's justification for filing the lien.

A summary of the reasons for filing the lien is stated in the above Statement of Case.  Salem's main reason for filing the lien was the clear insider deals the Bank was doing that may have render it judgment proof, as has been done with its predecessor, Mutual Bank. (Doc. #61, App. 97). Salem was not necessarily seeking to stop any sale, the lien sought to ensure that if the Bank was not able to pay for the property it damaged, then the funds will come from its real property, which the Bank was intentionally selling for an amount that was 1.5 million dollars less than another open and

available offer.  This is uncontroverted and clear evidence of insider-

dealings, (Doc. #61 – 67, App. 97).  The Bank's obvious and undisputed acts

of insider-dealings, which may render it judgment proof, were not refuted.

There is no evidence, or even alleged facts, to contradict Salem's evidence

of these acts.

The Bank's counsel had an opportunity to refute Salem's evidence and

allegations that justify filing the lien, but he was silent.  When counsel is

silent on alleged facts and evidence, then the silences is to be considered an

admission.  If a party fails to refute evidence in the record, those facts are

deemed admitted. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Malec

v. Sanford,* 191 F.R.D. 581, 584 (N.D. Ill. 2000).

The hearsay testimony presented in Salem's Declaration (Doc. #61, App.

97) was to show his justification for filing the lien.  Had there been an

evidentiary hearing or a trial, rather than a summary proceeding, witnesses

would have appeared in court and their testimony would not have been

hearsay.  Even if Salem obtained affidavits from these witnesses, the

affidavit will still be hearsay in a summary proceeding.  The only means to

verify the hearsay portions of the evidence in Salem's Declaration, was to

hold an evidentiary hearing, which the District Court Judge was required to

do, based on the above-cited case law, but failed to do so.

Salem agreed to pay any financial harm the lien may have caused the

Bank, if evidence was presented showing that the filing of the lien was not

justified. (Doc. 61, page 7, last line , App. 103).  However, no such evidence

was presented and no financial harm to the Bank resulted based on the

Counterclaim it subsequently filed in this action.

In Salem's Declaration evidence was presented in the form of emails and

a signed purchase contract, that shows the Bank had two available offers to

purchase the hotel: one offer was for 2.5 million dollars and the other was

for one million dollars.  The Bank accepted the one million dollar offer,

which is 1.5 million dollars less than the other offer and this is an undisputed

fact. (Doc. #61-67, App. 97).  Together with the other evidence in Salem's

Declaration that shows the Bank selling its property for less than it is worth.

Thus a reasonable person can conclude that the Bank was conducting

insider-dealings, which may render it judgment proof, just as its predecessor

Mutual Bank did before it was sold. (See the pending action in the US

District Court, Northern District of Illinois, *FDIC v. Amrish Mahajan et al.*,

Case No. 11-CV-7590.)

Whether Salem was mistaken in filing the lien or did so intentionally to

financial harm the Bank, there is no legal basis to hold him in contempt

because the act of filing the lien did not violate any court order, did not

obstruct the administration of justice and Salem took financial responsibility for it.

### Conclusion

On the basis of the foregoing, the District Court Judge erred because he had no legal basis in holding attorney Salem in contempt for the act of filing a lien, for which Salem took full financial responsibility.  The lien did not require urgent action by the District Court Judge because there was no possible irreparable harm that could have resulted.  There was no violation of any court order by filing the lien and there was no obstruction of justice.  Even if Salem's justification for filing the lien was baseless, then this would result in a money claim against him, rather than holding attorney Salem in contempt.

This case is unprecedented and the District Court Judge's decision to hold attorney Salem in contempt should be reversed.

Dated: July 7, 2014,

<div style="margin-left:50%">

Respectfully submitted,

/s/Maurice J. Salem,
Attorney at Law
Appellant, *pro se*
7156 West 127th Street, B-149
Palos Heights, IL 60463
Tel. (708) 277-4775
Fax. (708) 357-4029
Email: salemlaw@comcast.net

</div>

35

**CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)**

I, Maurice J. Salem, am the attorney of record in this action and I hereby certify that this Appellant's Brief conforms to the rules contained in Rule 32(a)(7) for brief produced with a proportionally spaced font.  The length of the Brief is **9,143 words**.

/s/Maurice J. Salem,

**CERTIFICATION
PURSUANT TO CIRCUIT RULE 30(d)**

I, Maurice J. Salem, am the attorney of record in this action and I hereby certify that all required materials are in the Appendix to the Brief and the separate Appellants Appendix.  All material required by Circuit Rule 30(a) & (b) are included.  I also certify that the contents of the Appendix to the Brief and the separate Appellant Appendix containing true copy of the original record on file in this Court.

/s/Maurice J. Salem,

**CERTIFICATION
PURSUANT TO CIRCUIT RULE 31(e)**

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 31(e), a version of the brief and all of the appendix items that are available in non-scanned PDF format.

/s/Maurice J. Salem,

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2014, a copy of the foregoing Brief and separate Appendix were served the attorney of record through first class mail and electronic means.

/s/Maurice J. Salem,

# **<u>Required Short Appendix</u>**
# **<u>to Appellant's Brief</u>**

# **<u>District Court's Two Orders</u>**
# **<u>On Appeal</u>**