IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TRADE WELL INTERNATIONAL,

                Plaintiff,                  OPINION & ORDER

   v.

                                         12-cv-701-wmc

UNITED CENTRAL BANK,

                Defendant.

---

On October 16, 2014, the court conducted an evidentiary hearing on default judgment with respect to UCB's counterclaims in this case. Plaintiff Trade Well International failed to appear; defendant United Central Bank ("UCB") appeared by Attorney Brian Thill.

UCB filed its counterclaims at the court's invitation on June 4, 2014, and Trade Well was served the same day (dkt. #87). Because Trade Well failed to answer or otherwise defend with respect to the counterclaims, the court entered default on September 12, 2014; set the evidentiary hearing for default judgment; and ordered Trade Well to show cause by October 3, 2014, as to why its case-in-chief should not be dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). (Dkt. #106.) Because Trade Well has offered no response to the show cause order, its affirmative claims are dismissed with prejudice under Rule 41(b).

Turning to entry of a default judgment in favor of UCB, default was previously entered with respect to two counterclaims: (1) declaratory judgment that the "Notice of Lien" filed by Attorney Salem on Trade Well's behalf is invalid, void and unenforceable as of its first filing; and (2) slander of title pursuant to Wis. Stat. § 706.13(a). Because UCB

has now presented evidence supporting its counterclaims, the court will enter default judgment in its favor as set forth below.

## FACTS

Because the court has entered default, it accepts as true all of the factual allegations in the counterclaims, except those relating to damages. *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Specifically, UCB alleged that:

- Trade Well held no title interest in either the hotel property itself (the "real property") or the personal property it failed to remove as of January 24, 2014 (counterclaim (dkt. #86) ¶ 9);

- UCB owned the real property from August 23, 2012 until March 31, 2014 (*id*. at ¶ 10);

- Attorney Maurice J. Salem filed a Notice of Lien on March 12, 2014, in the Sauk County, Wisconsin, Office of the Register of Deeds ("the Lien") (*id*. at ¶¶ 12-15);;

- The Lien was not authenticated by a member of the State Bar of Wisconsin (*id*. at ¶¶ 16-17);;

- The Lien included multiple misrepresentations, including that the real property was the subject matter of this action and that subsequent purchasers were bound by the results of this action (*id*. at ¶¶ 18-21);

- Trade Well never properly served the Lien on UCB nor filed it with the Clerk of Circuit Court for Sauk County (*id*. at ¶¶ 24-25);

- Trade Well knew or should have known the contents of the Lien were false, a sham, or frivolous (*id*. at ¶ 32);

- A sale of the real property, with UCB as seller, was scheduled for March 14, 2014, but did not occur because of the filing of the Lien (*id*. at ¶¶ 33-35);

- UCB sold the real property to a third party on March 31, 2014, and agreed to future duties requiring it to attempt to remove the Lien from the chain of title (*id*. at ¶ 28).

## OPINION

With respect to the first counterclaim, the court already "grant[ed] UCB's request for a declaratory judgment that the lien is void and require[d] Trade Well to withdraw it formally in a writing to the Register of Deeds, also providing a copy of this Opinion and Order." (Sep. 12, 2014 Opinion & Order (dkt. #106) 4.) UCB requests another order declaring the Lien to be "void or discharged" to the extent that Trade Well fails to comply with our previous order. Since Trade Well apparently failed to comply with the court's earlier order, this relief seems appropriate and necessary to carry out the court's intent.

With respect to the second counterclaim, the slander of title statute, Wis. Stat. § 706.13, reads in relevant part:

> In addition to any criminal penalty or civil remedy provided by law, any person who submits for filing, entering in the judgment and lien docket or recording, any lien, claim of lien, lis pendens, writ of attachment, financing statement or any other instrument relating to a security interest in or the title to real or personal property, and who knows or should have known that the contents or any part of the contents of the instrument are false, a sham or frivolous, is liable in tort to any person interested in the property whose title is thereby impaired, for punitive

3

> damages of $1,000 plus any actual damages caused by the filing,
> entering or recording.

Wis. Stat. § 706.13(1).  Accepting UCB's factual allegations as true, it has established a violation of § 706.13(1), because Trade Well, through its agent, Attorney Salem, submitted the Lien for filing under circumstances in which it knew or should have known that the contents were false or frivolous.  (*See generally* Counterclaims (dkt. #83) ¶¶ 9-10, 12-25, 32.)

UCB's claimed damages for Trade Well's violation of § 706.13(1) fall into four categories:

### i.        $1,000 Punitive Damages

The statute itself provides for these damages.  *See* Wis. Stat. § 706.13(1).  Given that the court has found a violation of the statute, UCB has demonstrated its entitlement to $1,000 in statutory damages.

### ii.        Reduced Closing Proceeds

Next, UCB seeks $552.86 in reduced closing proceeds.  This number appears to be derived from taking the difference between the "Cash to Seller" on the originally proposed settlement statement (*see* dkt. #109-1, p.2) and the "Cash to Seller" on the actual, final settlement statement (*see* dkt. #109-4, p.2) ($1,019,375.75 - $1,018,822.89 = $552.86). Based on UCB's written submissions and representations in open court, this amount would seem to be a very conservative estimate of UCB's "actual damages" from the Lien's filing. *Cf. Tym v. Ludwig,* 196 Wis. 2d 375, 386, 538 N.W.2d 600 (Ct. App. 1995) (in slander of title action, plaintiffs "must prove to the fact finder that they withdrew their home from the market because of the lien claim and that other unrelated factors were not the reasons for the lower sale price of their home").

4

### iii.   Lost Interest at Legal Rate of 5%[1]

Next, UCB seeks lost interest at the rate of 5% covering the period from March 14, 2014 -- the originally scheduled closing date -- until March 31, 2014 -- the actual closing date.  UCB has drawn that rate from Wis. Stat. § 138.04, which provides that "[t]he rate of interest upon the loan or forbearance of any money, goods or things in action shall be $5 upon the $100 for one year and according to that rate for a greater or less sum or for a longer or a shorter time[.]"  Usually, Section 138.04 is used to calculate prejudgment interest, but at least one case from this court states broadly that "Wis. Stat. § 138.04 provides that the legal rate of interest upon any money in an action is 5%."  *Datapoint Corp. v. M & I Bank of Hilldale*, 665 F. Supp. 722, 728 (W.D. Wis. 1987).  Like the reduced closing proceeds, the lost interest on the settlement money seems an appropriate and conservative estimate of UCB's "actual damages" incurred as the result of the filing of the Lien.

### iv.   Attorney Fees and Costs

Finally, UCB requests its attorney fees and costs incurred in both this action and, apparently, on appeal from this action in Appeals Case No. 14-1907.  The fees they seek total $40,670.00 for:

- Robert A. Pasch: $360/hour for 17.55 hours;

- Timothy J. Casper, $315/hour for 67.50 hours; and

- Brian P. Thill, $235/hour for 55.70 hours.

---

[1] The actual sum UCB seeks is $2,233.04, which appears to be 16 days' interest at 5% on the final settlement amount of $1,018,822.89.

5

After reviewing the billing records that UCB has submitted [and based on further representations made by counsel at the default hearing], the fee request appears to be confined to those actions taken by counsel on UCB's behalf in response to Attorney Salem's filing of the Lien and its aftermath.  UCB also seeks $438.54 incurred in costs, mostly to cover photocopies and postage.

There is apparently a split as to whether it is appropriate to award attorney fees as damages in a slander of title action.  *See* James O. Pearson, Jr., Annotation, *What Constitutes Special Damages in Action for Slander of Title*, 4 A.L.R.4th 532, §§ 9-10 (originally published 1981).  According to the annotation, most courts appear to permit recovery of litigation expenses incurred in counteracting the effect of slander of title.  *Id.* at § 9 & cumulative supplement (citing cases in Alabama, California, Colorado, Florida, Idaho, Illinois, Indiana, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Nevada, Ohio, Oklahoma, South Carolina, Tennessee, Utah and Washington).  The annotation cites only to two Louisiana cases, an Oregon case, and a Washington case that adhere to the opposite view, *see id.* at § 10,  and the cumulative supplement only contains a few cases more, most of which appear to recognize the general rule that litigation expenses are recoverable but qualifying it in some way, *id.* at § 10 cumulative supplement.

While it does not appear that Wisconsin has weighed in on the issue, the Wisconsin Court of Appeals in *Tym v. Ludwig*, 196 Wis. 2d 375, took a fact-intensive approach to the question of special damages under the slander of title statute:

> Special damages are those occurring as a natural consequence of the wrongful conduct, but not so necessarily foreseeable as to be implied in law.  Special damages may or may not be present as the result of the wrongful act – the proof depends on the factual circumstances of the case at hand.

6

*Id.* at 384 (internal citations and footnote omitted).

In a later case, *State v. Anderson*, 215 Wis. 2d 673, 573 N.W.2d 872 (Ct. App. 1997), the Wisconsin Court of Appeals considered special damages in the context of restitution. The trial court cited approvingly to *Tym*'s discussion of special damages in concluding that the costs of litigation were recoverable as special damages under the restitution statute. The court of appeals concurred:

> We agree with the trial court which correctly noted in its decision that our supreme court recognizes an exception to the "American Rule" where the incurred attorney fees are the natural and proximate result of a wrongful act by the defendant which subjects the plaintiff to litigation with a party other than the defendant. Additionally, we have recognized that an award of attorney fees may be awarded as damages to parties who, because of the tortious conduct or breach of contract by another, have had to protect their interest by bringing or defending an action against or by a third party. Likewise, our supreme court has held that injured persons may recover all damages reasonably caused by someone's fraud, including consequential or special damages.

*Id.* at 681 (internal citations omitted).

*Anderson* is admittedly distinguishable. First, it deals with a restitution statute. Second, this case required UCB to expend fees litigating against *Trade Well*, not against a third party. Nevertheless, the combination of the *Tym* court's approach in the slander-of-title context, the extension of that approach to attorney fees in *Anderson*, and the weight of authority in other jurisdictions persuades the court that an award to UCB of its litigation expenses against Trade Well as actual damages for slander of title is appropriate.

However, some courts have distinguished between litigation expenses incurred in removing the cloud from the title, and litigation expenses incurred in bringing the slander of title claim itself. *See, e.g.*, *Colquhoun v. Webber*, 684 A.2d 405 (Me. 1996). This appears a

reasonable distinction, although here most of the fees appear to have been incurred in trying to get the Lien removed and responding to Attorney Salem's various filings opposing its removal. In contrast, the tort claim appears to have taken little, if any, attorney time based on the records. (*See* dkt. #109-5.) The court will, therefore, exclude fees incurred before this court on the second counterclaim only, as well as all fees incurred in the pending Seventh Circuit appeal (since the issue there is Attorney Salem's conduct, rather than the Lien itself). Indeed, Trade Well is not even a party to that appeal. After those deductions, the remainder of fees and costs requested and incurred in removing the Lien will be awarded. UCB's counsel is directed to advise the court by affidavit of the amount of its requested fees and costs attributable to these excluded activities. Assuming that submission is acceptable to the court, an additional order will award attorney fees and costs.

ORDER

IT IS ORDERED that:

1. Plaintiff Trade Well International's affirmative claims are DISMISSED with prejudice.

2. The Notice of Lien recorded March 12, 2014, at 3:55 p.m. as Doc # 1089064 is declared NULL AND VOID, and the Register of Deeds for Sauk County, Wisconsin, is directed to withdraw that Lien from its records or take such other steps as necessary to insure that it is not a shadow on the Deed for the property located in the Township of Wisconsin Dells, Wisconsin, designated as Lot One (1) of Certified Survey Map #1891, tax roll parcel number 291-0121-10000.

3.  Default judgment is also awarded in favor of defendant United Central Bank against plaintiff Trade Well International in the amount of $1,000 in statutory damages; $552.86 in reduced closing proceeds; $2,233.04 in lost interest; and attorney fees and costs to be established by subsequent order of this court as set forth above.

Entered this 16th day of October, 2014.

BY THE COURT:

WILLIAM M. CONLEY
District Judge